UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

Jennifer B.[1],                                    )
                                                   )
            Plaintiff,                             )
                                                   )
      v.                                           )      CIVIL NO. 1:19cv347
                                                   )
ANDREW M. SAUL,                                    )
Commissioner of Social Security,                   )
                                                   )
            Defendant.                             )

OPINION AND ORDER

      This matter is before the court for judicial review of a final decision of the defendant

Commissioner of Social Security Administration denying Plaintiff's application for Disability

Insurance Benefits (DIB) and Supplemental Security Income (SSI) as provided for in the Social

Security Act.  Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the

[Commissioner] shall file a certified copy of the transcript of the record including the evidence

upon which the findings and decision complained of are based.  The court shall have the power

to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or

reversing the decision of the [Commissioner], with or without remanding the case for a

rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by

substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

      The law provides that an applicant for disability benefits must establish an "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to last for a continuous period of no less than 12

_____

      [1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment

is "an impairment that results from anatomical, physiological, or psychological abnormalities

which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It

must be shown that the impairment is severe enough to preclude the plaintiff from engaging in

substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372

U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that

the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds*

*v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

        Given the foregoing framework, "[t]he question before [this court] is whether the record

as a whole contains substantial evidence to support the [Commissioner's] findings."  *Garfield v.*

*Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786

(7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere

scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting

*Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*,

552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed,

42 U.S.C. §405(g), unless there has been an error of law."  *Garfield*, *supra* at 607; *see also*

*Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

        In the present matter, after consideration of the entire record, the Administrative Law

Judge ("ALJ") made the following findings:

        1.      The claimant meets the insured status requirements of the Social Security Act

2

through March 31, 2020.

2.        The claimant has not engaged in substantial gainful activity since September 7, 2014, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.        The claimant has the following severe impairments: Type II diabetes mellitus, irritable bowel syndrome (IBS), lumbosacral spondylosis and radiculopathy, status-post laminotomy and discectomy at L4-5 and L5-S1, longitudinal split tear of the posterior tibialis tendon on the right and subtalar arthritis subsequent to posterior tibial tendon insufficiency on the right (20 CFR 404.1520(c) and 416.920(c)).

4.        The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.920(d), 416.925 and 416.926).

5.        After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1467(b) and 416.967(b) except the claimant can stand and/or walk for a total of 4 hours in an 8-hour workday.  She can occasionally operate foot controls bilaterally and occasionally climb ramps and stairs.  The claimant can never climb ladders, ropes or scaffolds.  She can occasionally balance, stoop, kneel, crouch, and crawl.  She must avoid unprotected heights, moving mechanical parts and operating a motor vehicle.  She can tolerate occasional exposure to vibration.

6.        The claimant is capable of performing past relevant work as a Data Entry Clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.        The claimant has not been under a disability, as defined in the Social Security Act, from September 78, 2014, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 27- 38 ).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits.

The ALJ's decision became the final agency decision when the Appeals Council denied review.

This appeal followed.

Plaintiff  filed her opening brief on March 2, 2020.  On April 13, 2020 the defendant filed

a memorandum in support of the Commissioner's decision to which Plaintiff replied on May 11,

2020. Upon full review of the record in this cause, this court is of the view that the ALJ's

decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See*

*Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-

91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test

as follows:

> The following steps are addressed in order: (1) Is the claimant
> presently unemployed? (2) Is the claimant's impairment "severe"?
> (3) Does the impairment meet or exceed one of a list of specific
> impairments? (4) Is the claimant unable to perform his or her
> former occupation? (5) Is the claimant unable to perform any other
> work within the economy? An affirmative answer leads either to
> the next step or, on steps 3 and 5, to a finding that the claimant is
> disabled. A negative answer at any point, other than step 3, stops
> the inquiry and leads to a determination that the claimant is not
> disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162

n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature

of the ALJ's decision to deny benefits, it is clear that Step 4 was the determinative inquiry.

On May 24, 2015, Plaintiff protectively filed a Title II application for a period of disability

and disability insurance benefits, and protectively filed a Title XVI application for supplemental

security income. (AR 25.) In both applications, she alleged disability beginning September 7,

2014. (*Id.*) The claims were denied initially and upon reconsideration. (*Id.*) Plaintiff appeared and

testified at a hearing held on July 27, 2017. (AR 45-92.) On December 8, 2017, ALJ Arman Rouf

issued an unfavorable decision. (AR 25-39.) The Appeals Council denied Plaintiff's request for

review (AR 11-15), leading to the present appeal.

Plaintiff was born on April 29, 1972 (AR 301), and was 45 years old on the date that the ALJ issued his decision.

A November 10, 2014 MRI of Plaintiff's lumbar spine revealed mild degenerative changes and mild degrees of spinal stenosis at the L4-L5 and L5-S1 levels. (AR 356.) She received a lumbar epidural injection on December 5. (AR 367.) On December 21, Plaintiff reported a very temporary improvement from the injection, but stated that her back pain had progressively worsened. (AR 376.) She reported that she felt unable to leave the house due to falling and bowel incontinence. (*Id*.) On December 29, she reported that standing and walking made her pain worse. (AR 414.) On December 30, electrodiagnostic imaging showed "electrophysiologic evidence . . . consistent with chronic left S1 radiculopathy." (AR 357.)

On January 8, 2015, treating surgeon Robert Shugart, M.D., noted positive root tension signs and decreased sensation in Plaintiff's lumbar spine. (AR 382.) Plaintiff reported left leg pain. (*Id*.) Dr. Shugart recommended surgery, but informed her that the surgery would not solve her problem completely. (*Id*.) On January 23, Plaintiff underwent a laminotomy discectomy at L4-L5 left and L5-S2. (AR 362.) On April 14, Plaintiff reported that her leg pain had improved by 60%, but that she still had lower back pain. (AR 393.) Dr. Shugart recommended the following permanent restrictions: no lifting over 25 pounds; occasional bending and twisting; and an occasional sit/stand option at 30- minute intervals. (*Id*.) On May 5, an examination revealed pain to mid-spine at L5-S1 and left of mid-spine with extension and lateral bending to the left. (AR 405.)

On July 23, 2015, non-examining State Agency reviewing physician, J.V. Corcoran, M.D.,

evaluated Plaintiff's medical records at the initial level. (AR 98-100, 101.) Dr. Corcoran opined

that she could frequently climb ramps and stairs, stoop, balance, kneel, crouch, and crawl. (AR

98- 99.) Dr. Corcoran concluded that she could perform medium work. (AR 101.) At the

reconsideration level, J. Sands, M.D., concurred. (AR 121-23, 124.)

On July 24, 2015, Plaintiff met with Leslie Predina, Ph.D., for a consultative examination.

She reported depression symptoms such as crying, sadness, eating more than usual, feelings of

worthlessness, and withdrawal. (AR 466.) She did not want to be around others for fear of being

judged. (*Id*.) She reported that she was currently unable to complete self-care tasks or chores. (AR

467.) Dr. Predina observed that Plaintiff's "mood suggested feelings of depression, and anxiety,"

and that she "appeared to have minor problems recalling information." (*Id*.) Dr. Predina

concluded that Plaintiff's "response to the mental status exam indicated that her immediate,

recent, and remote memory was slightly less than average," and that her "[v]erbal abilities,

including judgment and abstract thinking, were slightly less than average." (AR 468.) Dr. Predina

concluded that her symptoms were consistent with major depressive disorder and social anxiety

disorder. (AR 469.)

On August 14, 2015, Plaintiff reported lumbar pain that radiated to her left lower

extremity. (AR 481.) On September 23, she reported a depressed mood, an inability to perform

her normal activities, loss of energy, feelings of worthlessness and guilt, difficulty concentrating,

and worsened anxiety. (AR 540.) A November 16, 2016 MRI of Plaintiff's lumbar spine revealed:

mild facet degenerative changes at L1-L2; moderate facet degenerative changes at L2-L3 and

L3-L4; disc desiccation and mild diffuse disc bulge, with moderate facet degenerative changes, at

L4-L5; and disc desiccation with moderate facet degenerative changes at L5-S1. (AR 790-91.)

On March 22, 2016, Plaintiff reported fatigue, nausea, and abdominal pain. (AR 708.) On August 10, she described falling approximately 3 to 4 times a week. (AR 677.) On December 16, she again reported falling frequently and problems with balance. (AR 643.) She had pain in her feet and ankles, and experienced chronic pain in her lower back that radiated down her left leg. (AR 647.) She described excessive daytime tiredness, a lack of energy, poor concentration, and fatigue. (AR 649.) Plaintiff described the following neurological symptoms: fainting; numbness; tingling and tremors; memory loss; difficulty concentrating; weakness; difficulty with word recall; and headaches. (*Id*.)

In support of remand, Plaintiff first argues that the ALJ erred by failing to evaluate or accommodate her mild mental limitations in the RFC assessment. The ALJ found that Plaintiff had mild mental limitations in all four "Paragraph B" categories: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. (AR 28-29.) The ALJ noted that the "limitations identified in the 'paragraph B' criteria [were] not a residual functional capacity assessment," and that "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments." (AR 29.) Plaintiff argues that despite recognizing the necessity of a "more detailed analysis," the ALJ failed to provide any additional assessment of Plaintiff's mild mental limitations. Plaintiff notes that the ALJ did not include any mental limitations in his hypotheticals to the VE or in the RFC assessment. "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the

record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014).

Plaintiff contends that the ALJ's failure to evaluate her mild mental limitations was not harmless error. *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (stating that an error is harmless only "[i]f it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support," because remanding would be a "waste of time"). The ALJ found that Plaintiff could perform her past relevant work as a data entry clerk. (AR 36.) Plaintiff testified that this work required her to input address information. (AR 54.) Plaintiff argues that even mild limitations in understanding, remembering, and applying information, or in concentration, persistence, and pace, could preclude this work, especially because it was semi-skilled with an SVP of 4. (AR 37.) Plaintiff reasons that a person with even mild impairments in sustaining concentration could make minor errors (like transposing two numbers) which could have significant practical consequences. Plaintiff correctly notes that this Court, and others in the Seventh Circuit, have remanded where the ALJ failed to evaluate the claimant's mild mental limitations. *See e.g., Dawn W. v. Berryhill*, 2019 WL 2085196, *4 (N.D. Ill. May 13, 2019) ("The inclusion of even mild limitations in social functioning or concentration, persistence, or pace may preclude the ability to perform skilled and semi-skilled work."); *Miller v. Commissioner of Social Security*, 2017 WL 1421271, *7 (N.D. Ind. Apr. 21, 2017); *Dross-Swart v. Astrue*, 872 F.Supp.2d 780, 795 (N.D. Ind. 2012) ("Although not severe, the mild limitations in activities of daily living social functioning and concentration, persistence and pace . . . should have been incorporated into the ALJ's RFC analysis."); *Koswenda v. Astrue*, 2009 WL 958542, *5 (N.D. Ill. Apr. 2, 2009).

The ALJ found that Plaintiff could also work as a collator, office helper, or small products assembler. (AR 38.) Plaintiff claims that it is unclear if her mild mental limitations would allow her to perform these jobs. The VE testified on cross-examination that employers would not tolerate an employee who was off-task more than 10 percent of the workday. (AR 88.) Plaintiff contends that a mild limitation in concentration, persistence, and pace could cause Plaintiff to be off-task 10 percent of the time, especially in combination with her other impairments that could cause her to be excessively off-task.  For example, her irritable bowel syndrome required her to make frequent bathroom trips. (AR 544, 656, 711.) The VE testified that an individual who needed to use the restroom every 20 to 30 minutes, for 10 minutes at a time – limitations that Plaintiff reported at the hearing (AR 62-63) - would be excessively off-task. (AR 88.) Plaintiff also suffered from lumbar radiculopathy (AR 374), lumbosacral and lumbar spondylosis (AR 772), herniated discs (AR 362), and rotator cuff syndrome (AR 401), all impairments that caused pain. She testified that her medication caused drowsiness, memory loss, and confusion. (AR 65-66.) Thus Plaintiff argues that the ALJ should have evaluated the effect her mild mental limitations would have on her ability to perform her past relevant work along with the collator, office helper, and small products assembler jobs. *See e.g.*, SSR 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"); *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) ("A failure to fully consider the impact of non-severe impairments requires reversal.").

In response, the Commissioner states that "[b]efore moving to step four of the sequential evaluation process, the ALJ evaluated Plaintiff's RFC and found that Plaintiff did not require non-exertional limitations." The Commissioner cites generally to pages 30 and 32 of the

administrative record, but does not identify where the ALJ discussed why mental RFC limitations were unnecessary. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010) ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions.").

As discussed above, Plaintiff argued that the ALJ's failure to include any RFC restrictions related to her mild mental limitations was not harmless for two reasons. First, the ALJ concluded that she could perform her past relevant work as a data entry clerk. (AR 36.) This work, per Plaintiff's testimony, required her to input address information. (AR 54.) The Dictionary of Occupational Titles states that a data entry clerk's duties can include: entering data from source documents into a computer; comparing data entered with source documents, or re-entering data in verification format on screen to detect errors; deleting incorrectly entered data and re-entering correct data; compiling, sorting, and verifying accuracy of data to be entered; and keeping records of work completed. DICOT 203.582-054 (G.P.O.), 1991 WL 671700. Plaintiff's testimony, and the Dictionary of Occupational Titles, reflect that accuracy is an important aspect of a data entry clerk's work. As such, it is not clear whether an individual with mild mental limitations could perform this semi-skilled work. *See e.g., Barnes v. Saul*, 2020 WL 1041488, *3 (N.D. Ind. Mar. 3, 2020) ("Even though the ALJ found that Plaintiff's limitations were mild and non-severe, he was still required to consider them in the RFC, particularly because the jobs he recommended for Plaintiff demanded 'skilled' or 'semi-skilled' work."). The Commissioner contends that "the ALJ alternatively identified three other unskilled jobs Plaintiff could perform within the assigned RFC." However, courts have applied this rule without explicitly requiring the jobs to be of a specific skill level. *See e.g., Rohr v. Berryhill*, 2018 WL 3359613, *3 (N.D. Ind. July 10, 2018);

10

*Muzzarelli v. Astrue*, 2011 WL 5873793, *23 (N.D. Ill. Nov. 18, 2011); *see also Cheryl C. v. Berryhill*, 2019 WL 339514, *3 (N.D. Ill. Jan. 28, 2019) (noting that the ALJ's failure to evaluate the claimant's mild mental limitations was an "especially critical" error because her past work was skilled and semi-skilled). In any event, the Commissioner's argument fails because ALJs are always obligated to consider the limitations stemming from all of a claimant's impairments, even those that are non-severe. *See* SSR 96-8p; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

The Commissioner further attempts to defend the ALJ's error by pointing to the fact that "the ALJ noted that while Plaintiff testified that she had difficulty remembering directions and almost fell asleep while driving, she did not make these reports to physicians, and in fact, reported that she had no driving impairments on her medication regimen." (citing AR 34.) The Commissioner also states that "the ALJ noted that Plaintiff testified she was able to wash dishes, garden at her church, do laundry and grocery shop twice a week[.]" (*Id.*) The Commissioner does not explain why, or how, this evidence reflects that mental RFC limitations were not necessary. Moreover, the ALJ mentioned this evidence when evaluating Plaintiff's statements about her symptoms, and did not rely on this evidence to explain the lack of mental restrictions in the RFC. (AR 34.) The Commissioner attempts to defend the ALJ's decision on grounds that the ALJ did not articulate in violation of the *Chenery* doctrine. *See e.g., Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012). However, the fact remains that the ALJ, despite finding mild mental limitations in all four "Paragraph B" domains, failed to offer any analysis of why these mild mental limitations would not affect Plaintiff's ability to work. *See Miller v. Commissioner of Social Security*, 2017 WL 1421271, *7 (N.D. Ind. Apr. 21, 2017); *Dross-Swart v. Astrue*, 872 F.Supp.2d

780, 795 (N.D. Ind. 2012); *Alesia v. Astrue*, 789 F.Supp.2d 921, 933-34 (N.D. Ill. 2011).

Accordingly, remand is required on this issue.

Next Plaintiff argues that the ALJ erred in failing to identify the maximum amount of time

Plaintiff could lift, carry, or sit in an 8-hour workday.  The ALJ found that Plaintiff could perform

"light work as defined in 20 CFR 404.1567(b) and 416.967(b)," with standing and/or walking for

4 hours in an 8-hour workday. (AR 30.) Plaintiff contends that the ALJ erred in relying on these

regulations, because they indicate that many employment situations could constitute light work:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting
> or carrying of objects weighing up to 10 pounds. Even though the weight lifted
> may be very little, a job is in this category when it requires a good deal of walking
> or standing, or when it involves sitting most of the time with some pushing and
> puling of arm or leg controls.

20 C.F.R. § 404.1567(b); 20 C.F.R. § 416.967(b). Plaintiff points out that the ALJ neglected to

identify the maximum amount of time that Plaintiff could sit, lift, or carry in an 8-hour workday,

in violation of Social Security Regulations. *See* SSR 96-8p ("In assessing RFC, the adjudicator

must discuss the individual's ability to perform sustained work activities in an ordinary work

setting on a regular and continuing basis . . . and describe the maximum amount of each

work-related activity the individual can perform based on the evidence available in the case

record."). Plaintiff argues that this Court is unable to do a meaningful review of the ALJ's RFC

assessment without knowing the exact parameters of the ALJ's RFC findings. *See Briscoe ex rel.*

*Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) ("In addition to relying on substantial

evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to

perform meaningful appellate review.").

Plaintiff further argues that the ALJ's error was not harmless. Plaintiff points out that it is

not clear whether Plaintiff could sustain the lifting or carrying required for the full range of light work, which is 20 pounds at a time, with frequently lifting and carrying of objects weighing up to 10 pounds. Plaintiff testified that she could comfortably lift 10 to 15 pounds, but not for a very long period of time. (AR 68.) Plaintiff notes that she suffers from diabetic neuropathy in her hands. (AR 78.) Plaintiff further contends that the RFC assessment was also not specific enough about the amount of time Plaintiff could sit during the workday, and if she would be able to shift positions at will, or in what intervals. She testified that she struggled to sit for longer than 20 or 30 minutes at a time. (AR 68.) Sitting for prolonged periods of time aggravated her diabetic neuropathy. (AR 78.) She testified that she frequently shifted positions and took breaks during the day, and could not walk or stand for more than 10 to 15 minutes at a time. (AR 59, 68, 77-78.) Following her laminotomy discectomy surgery, her surgeon recommended that she be permanently restricted to sitting and standing in 30-minute intervals. (AR 393.)

Plaintiff contends that, with no explanation of how long Plaintiff could sit, lift, or carry in the hypothetical to the VE or in the RFC assessment, it impossible for this Court meaningfully review the ALJ's findings. Plaintiff points out that, given that her past relevant work as a data entry clerk was sedentary, coupled with the evidence supporting that she would not be able to sit for long periods of time, the ALJ was required to articulate how long, when, and in what intervals she would be sitting during the workday. Additionally, Plaintiff testified that she performed her past relevant work as a data entry clerk almost entirely sitting down. (AR 54.) Thus Plaintiff concludes that, in failing to define how long Plaintiff could sit in the workday, the ALJ incorrectly determined that she could perform this job as actually performed. (AR 36.) Similarly, with no defined lifting or sitting limitations, it is unclear if Plaintiff could perform light work as a

13

collator, office helper, or small products assembler. It is possible, for example, that a more restricted lifting limitation, a sit/stand option, or both, could have led the VE to testify that these jobs were not available. Plaintiff points out that other Courts have remanded where the ALJ failed to "describe the maximum amount of each work-related activity" the claimant could perform. SSR 96-8p. *See e.g., Schmidt v. Comm'r of Soc. Sec.*, 2013 WL 6188442, *8 (D.N.J. Nov. 25, 2013) (stating that a "function-by-function analysis" of the claimant's exertional capacity was required in order "to determine whether [the claimant] was able to perform past relevant work . . . and assess whether there were jobs in the national economy that [the claimant] could have performed"); *Sharma v. Astrue*, 2008 WL 4540992, *6 (N.D. Cal. Oct. 6, 2008) (stating that merely citing a regulation defining the exertional category of work "is insufficient to fulfill the function-by-function and narrative requirements under SSR 96-8p"); *Pearson v. Barnhart*, 380 F.Supp.2d 496, 507-08 (D.N.J. 2005) (remanding where "the ALJ did not specify the amount of time that the plaintiff was able to perform each of the seven exertional functions during an 8 hour day, particularly those which may have been affected by plaintiff's exertional limitations," and instructing the ALJ on remand to "describe the maximum amount of each work-related activity the plaintiff is able to perform during an 8 hour workday").

In response, the Commissioner claims that the ALJ was "required to consider – but not articulate – the RFC on a function-by-function basis." The Commissioner relies on *Knox v. Astrue*, 572 F.Supp. 2d 926 (N.D. Ill. 2008), aff'd, 327 Fed.Appx. 652 (7th Cir. 2009).  However, the Commissioner's reliance on this case is misplaced. In *Knox*, the Court found that "while the ALJ did not explicitly articulate a function-by-function assessment of Plaintiff's ability to perform the numerous work-related tasks, the ALJ's articulation satisfied the requirements of

14

SSR 96-8p," because the ALJ did not find any "evidence in the record to suggest Claimant was unable to sit, stand, or walk." *Knox* at 939.  In the present case, Plaintiff testified that she was able to lift only 10 to 15 pounds, but not more than a few times in an 8-hour workday: " . . . I would feel comfortable doing it a couple times. After that, I would not feel comfortable." (AR 68.) She suffered from diabetic neuropathy in her hands that affected her use of her left hand. (AR 78-79.) Plaintiff also testified that she struggled to sit for longer than 20 to 30 minutes at a time, and that sitting for prolonged periods of time made her diabetic neuropathy pain worse. (AR 68, 78.) She needed frequent breaks, had to alternate positions, and was unable to walk or stand for longer than 10 to 15 minutes. (AR 59, 68, 77-78.) Her surgeon recommended that following her lumbar surgery, she would need a permanent restriction to sitting and standing in 30-minute intervals. (AR 393.) As such, the ALJ was required to be specific as to the amount Plaintiff would be lifting and carrying during the day, and was obligated to determine how long she could sit and in what intervals she could sit during the workday.

As discussed above, the ALJ found that Plaintiff could perform her past relevant, sedentary work as a data entry clerk. (AR 36.) Plaintiff testified that she performed this job almost entirely seated. (AR 54.) Given the evidence, and her testimony about her work and inability to sit for long periods of time, the ALJ was particularly obligated to explain what kind of sitting restrictions she would need to successfully work full-time. Moreover, by failing to specify Plaintiff's sitting restrictions, the ALJ inappropriately found that she could perform her past work as actually performed. (AR 36.)

The Commissioner states that "[i]f someone can do light work, the Commissioner determines that she can also do sedentary work." The Commissioner ignores the relevant

language of the regulation: "If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as . . . [the] inability to sit for long periods of time." 20 C.F.R. § 404.1567(b). With no definition of her sitting, lifting, and carrying limitations, it is not clear whether Plaintiff can perform the jobs identified by the VE and ALJ. Thus, as the ALJ failed to identify the amount of time Plaintiff could lift, carry, or sit in an 8-hour workday, remand is required on this issue.

Next, Plaintiff argues that the ALJ failed to articulate what evidence supported his RFC conclusions.  ALJs are required to "build an accurate and logical bridge" from the evidence to their conclusion. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). ALJs must also provide a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence[.]" SSR 96-8p. Here, the ALJ found that Plaintiff could stand and/or walk for 4 hours in an 8-hour workday, with occasional operation of foot controls bilaterally, and occasional climbing of ramps and stairs. (AR 30.) The ALJ found that Plaintiff could occasionally balance, stoop, kneel, crouch, and crawl. (*Id.*) The ALJ wrote: "In sum, the above residual functional capacity assessment is supported by objective findings, the claimant's testimony, the opinion evaluation and other factors as discussed above." (AR 36.) Plaintiff argues that the ALJ never specifically identified what evidence supported his RFC findings.

The ALJ afforded "little weight" to the opinions of the non-examining State Agency reviewing physicians, who opined that the claimant was capable of medium work with frequent balancing, stooping, kneeling, crouching, and crawling, and climbing of ramps and stairs. (AR 35, 98- 99, 101 121-22, 124.) The ALJ afforded only "partial weight" to the opinion of Plaintiff's

treating surgeon, who recommended a permanent restriction to sitting and standing in 30-minute intervals. (AR 35, 393.) The ALJ also seemingly rejected Plaintiff's testimony that she could only stand or walk for 10 to 15 minutes at a time. (AR 68.) In rejecting all of the available opinions and testimony, the ALJ was left with an "evidentiary deficit." *Suide v. Astrue*, 371 Fed.Appx. 684, 690 (7th Cir. 2010). When faced with such a deficit, the ALJ should have summoned a medical expert who could have reviewed all of the medical evidence, and would have offered limitations that were grounded in the evidence. *Daniels v. Astrue*, 854 F.Supp.2d 513, 523 (N.D. Ill. 2012) ("Once the ALJ determined that Dr. Robinson's opinions were insufficient and unsupported by the medical evidence, the ALJ had a duty to conduct an appropriate inquiry to fill that gap. What the ALJ could not do was fill in the gap on her own."); *Bailey v. Barnhart*, 473 F.Supp.2d 822, 839 (N.D. Ill. 2006) (holding that where an evidentiary gap exists, ALJs must "call a medical advisor and or obtain clarification of the record to flesh out" what is needed to support their opinion").

In response, the Commissioner argues that the ALJ was not obligated to obtain medical expert testimony, because an ALJ is only required to "summon medical expert if that is necessary to provide an informed basis for determining whether the claimant is disabled", quoting *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000). The Commissioner insists that "the evidence was adequate for the ALJ to find that Plaintiff was not disabled, and the ALJ acted within his discretion in deciding not to call a medical expert." However, as Plaintiff has argued, he ALJ was simply not permitted to fill the evidentiary gap with his own lay opinion.  *Denson v. Berryhill*, 2018 WL 3546739, *5 (N.D. Ill. July 24, 2018) ("Instead of embarking on the RFC assessment herself, as she did, 'the ALJ had a duty to conduct an appropriate inquiry to fill' the evidentiary

gap created by the lack of medical RFC determinations.") (quoting *Daniels v. Astrue*, 854

F.Supp.2d 513, 523 (N.D. Ill. 2012)).  Accordingly, remand is warranted on this issue.

Next, Plaintiff argues that the ALJ erred in rejecting the opinion of Plaintiff's treating

surgeon , who recommended a permanent limitation to alternating between sitting and standing in

30-minute intervals.  Plaintiff claims that the ALJ reversibly erred in failing to provide "good

reasons" for affording only partial weight to the opinion of Plaintiff's treating surgeon, Robert

Shugart, M.D.  20 C.F.R. § 404.1527(c)(2)(ii); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir.

2010). On January 23, 2015, Plaintiff underwent a laminotomy discectomy at L5-L5 on the left

and at L5-S1. (AR 362.) Dr. Shugart opined on April 14, 2015, that she would need to be

permanently restricted to alternating between sitting and standing at 30-minute intervals. (AR

393.) Plaintiff contends that the ALJ mischaracterized Dr. Shugart's opinion and neglected to

identify the evidence he relied upon to reject the sit/stand option. Plaintiff further claims that the

ALJ also failed to address evidence supporting Dr. Shugart's opinion, and relied upon Plaintiff's

limited activities of daily living without explaining how they suggested a sit/stand option was

unnecessary. Plaintiff maintains that the ALJ improperly substituted his lay opinion for that of her

treating surgeon.  *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014). An ALJ's failure to

properly analyze a treating physician's opinion warrants remand.  *Minnick v. Colvin*, 775 F.3d

929, 938 (7th Cir. 2015).

The ALJ afforded Dr. Shugart's opinion partial weight because he found that his

"opinion was intended to be for a short period to ensure postoperative recovery." (AR 35.)

Plaintiff argues that the ALJ was incorrect and that Dr. Shugart confirmed three times that these

restrictions would need to be permanent, and never suggested that they would be unnecessary

18

after any period of time. (AR 393, 396.) *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)

("An ALJ can reject an examining physician's opinion only for reasons supported by substantial

evidence in the record[.]"). Plaintiff notes that her testimony reflects that she needed to alternate

positions frequently to manage her pain. (AR 58, 68, 77, 78.) She reported that she was

permanently restricted to alternating between sitting and standing every 30 minutes in her

Function Report. (AR 247.)

 The ALJ also opined that Dr. Shugart's opinion was "not consistent with the evidence as a

whole as subsequent records show that the claimant's condition improved in the months

following her surgeries." (AR 35.)  Plaintiff points out that the ALJ failed to identify what

evidence supported a conclusion that Plaintiff had improved such that a sit-stand option was not

necessary. (*Id*.) Plaintiff argues that evidence in the record supported Dr. Shugart's opinion and

contradicts the ALJ's findings. Plaintiff testified that her back pain had not improved since her

surgery. (AR 57-58.) She consistently described lower back pain following her January 2015

surgery. (AR 393, 405-06, 481, 647.) A November 2015 lumbar MRI revealed significant

findings, including degenerative changes and disc desiccation at multiple levels. (AR 790-91.) In

May of 2017, treating physician David Parks, M.D., opined that Plaintiff's chronic low back pain

"remained quite symptomatic for her." (AR 797.) While Plaintiff did testify that the surgery

improved her left leg pain and weakness, she also explained that she continued to experience pain

down her left leg every day. (AR 57-58.) She reported leg pain and weakness in 2016. (AR 643,

669, 677.) Plaintiff testified that sitting for too long made her pain "a lot worse," and that she

could not walk or stand for more than 10 or 15 minutes at a time. (AR 58.) She later explained

that she could not sit for longer than 20 to 30 minutes (AR 68), and explained that sitting for too

long aggravated her diabetic neuropathy. (AR 78.) Plaintiff notes that the Seventh Circuit has remanded where the ALJ fails to explain why a treating physician's opinion is inconsistent with the record, or fails to consider evidence supporting a treating physician's opinion. *Roddy v. Astrue*, 705 F.3d 631, 636-37 (7th Cir. 2013); *Lambert v. Berryhill*, 896 F.3d 768, 775 (7th Cir. 2018) ("An ALJ's failure to consider findings that support a treating physician's opinion is error.").

The ALJ also opined that Dr. Shugart's opinion was "not generally consistent" with Plaintiff's "statements that she is able to garden, do laundry, and grocery shop." (AR 35.) The ALJ did not acknowledge that Plaintiff testified that she no longer gardened regularly: "I used to love to garden all the time . . . We haven't had that this year. I used to have a lot of container plants on the porch, tomatoes, peppers . . . I haven't had any of that . . . gardening used to be my happy place." (AR 69-70.) In her Function Report, she wrote that she was no longer able to garden. (AR 246.) Plaintiff also testified that she "[s]ometimes" did laundry, but would "get very behind[.]" (AR 71.) Plaintiff also testified that her grocery shopping was limited due to her impairments. She would get a cart to lean on while shopping. (AR 72.) She needed her daughter's assistance to lift heavier items, like water, into the cart. (*Id*.) She would not buy heavy items unless her daughter was with her. (AR 73.) If she was shopping alone, she would only buy the groceries she needed for dinner that night. (*Id*.) She was not able to get items into the car and into her home unassisted: "If I do have something that I think might be too heavy, somebody will load it into the cart for me, and then my mother . . . comes out with the rollator, and we both move it onto her rollator to get it into the house." (*Id*.) The ALJ did not address Plaintiff's testimony that she needed breaks during her daily activities, such as cooking. (AR 58, 68.)  Thus, Plaintiff

20

concludes that the ALJ failed to build an "accurate and logical bridge" from these significantly limited activities and the conclusion that she could work without a sit/stand option. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).

Plaintiff contends that the ALJ's failure to properly weigh Dr. Shugart's opinion regarding the need for a sit/stand option was not harmless error. Plaintiff testified that she did not stand during her work as a data entry clerk. (AR 54.) She would not be able to perform her data entry clerk job as actually performed, if she needed to alternate between sitting and standing. Sedentary jobs are defined as requiring no more than occasional standing. 20 C.F.R. § 404.1567(a). A limitation to alternating between sitting and standing every 30 minutes would mean that an individual was standing half the time, or more than occasionally. SR 83-10 ("'Occasionally' means occurring from very little up to one-third of the time."). Plaintiff argues that it follows that an individual who would need to alternate between sitting and standing in 30-minute intervals could not perform any of the sedentary jobs as defined in the Dictionary of Occupational Titles.

The ALJ instructed the vocational expert to identify which portions of his testimony were inconsistent with the DOT and to provide a basis for his opinion. (AR 82.) The VE testified that an individual who needed to alternate between sitting and standing every 30 minutes could still work as a data entry clerk. (AR 86.) As for the jobs the ALJ found at Step 5 – collator, office helper, and small products assembler (AR 38) – the VE only testified that someone with this limitation could work as an assembler. (AR 86.) The VE explained that his opinion regarding the sit/stand option was based on his "experience and observations in the labor market." (*Id*.) The VE did not provide any more information, and the ALJ did not elicit any additional explanation. Plaintiff thus argues that the VE's explanation was insufficient. *Donahue v. Barnhart*, 279 F.3d

441, 446 (7th Cir. 2002) ("Evidence is not 'substantial' if vital testimony has been conjured out of whole cloth."); *Johnson v. Colvin*, 2015 WL 1486803, **9-10 (N.D. Ind. Mar. 31, 2015) ("The Court notes '[a]t a minimum, a vocational expert relying on personal experience, without any citation of objective reports or documents, must provide some specificity concerning the facts, figures, or other data that form the basis of his testimony'")(quoting *Smith v. Astrue*, 2010 WL 3526655, *7 (N.D. Ill. Sept. 1, 2010)). Plaintiff contends that, with no sufficient explanation from the VE, it is unclear if Plaintiff could work as a data entry clerk or small products assembler, with sitting and standing in 30-minute intervals. *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008) ("A finding based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated.").

In response, the Commissioner claims that "Dr. Shugart was referencing the exertional restrictions he opined, and not his opinion that Plaintiff was disabled/unable to work."  However, as Plaintiff has pointed out, the ALJ's decision does not clearly state what portions of Dr. Shugart's opinion were not intended to be permanent. (AR 35.) Even if the Commissioner's interpretation is accurate, the ALJ's conclusion that Dr. Shugart's recommended limitations were inconsistent with the record was not supported by substantial evidence. Evidence in the record supported Dr. Shugart's opinion. (AR 57-58, 68, 78, 393, 405-06, 481, 643, 647, 669, 677, 790-91, 797.) When discussing Dr. Shugart's opinion, the ALJ did not acknowledge this favorable evidence and did not explain why it was not persuasive.  *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) ("[T]he ALJ erred in utterly failing to even acknowledge the contrary evidence or to explain the rationale for crediting the identified evidence over the contrary evidence.").

The ALJ also relied on some of Plaintiff's activities of daily living to reject Dr. Shugart's opinion, including her ability to garden, do laundry, and shop for groceries. (AR 35.) As Plaintiff has argued, the evidence reflects that she rarely, if ever, was able to garden.(AR 69-70, 246.) Similarly, she testified that she was unable to keep up with her laundry. (AR 71.) Plaintiff needed help from her daughter and mother to shop and get the groceries into the house. (AR 72, 73.) The ALJ neglected to address the limitations Plaintiff experienced in her daily life, including her need to take breaks during tasks such as cooking. (AR 58, 68.) It is unclear how Plaintiff's daily activities reflect that she would not need the workplace restrictions Dr. Shugart recommended, and the ALJ failed to explain his decision. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). The Commissioner responds that the ALJ was "entitled to discount a medical opinion that provides little evidence in support of its conclusion."  The Commissioner, however, fails to explain (or show where the ALJ explained) how these activities conflicted with Dr. Shugart's opinion. Plaintiff maintains that her activities of daily living did not contradict Dr. Shugart's opinion, and the ALJ should have explained how he reached this conclusion. *Jeske v. Saul*, 955 F.3d 583, 593 (7th Cir. 2020) (stating that opinions from treating physicians "may be rejected only with an 'accurate and logical bridge' between the evidence and the ALJ's decision").

With respect to Plaintiff's argument that the ALJ's error was not harmless because she would be unable to perform her data entry clerk job if she needed to alternate between sitting and standing, the Commissioner responds that the VE testified that an individual who needed to sit and stand in 30-minute increments could work as a data entry clerk, and could work as an assembler (citing AR 86.) This is correct. However, the VE only based his testimony regarding the sit/stand option on his "experience" and "observations in the labor market." (AR 84.) The

ALJ did not seek an additional explanation. Thus, the VE's testimony was unreliable. *Wenzel v. Colvin*, 2015 WL 880581, *9 (N.D. Ind. Feb. 27, 2015).

The Commissioner cites *Liskowitz v. Astrue*, 559 F.3d 736 (7th Cir. 2009) to argue that the ALJ reasonably relied on the VE's testimony. However, in *Liskowitz*, the Seventh Circuit noted that the VE "actually identified her sources," including the United States Department of Labor and the Wisconsin Department of Workforce Development. *Liskowitz* at 743-44. Here, the VE did not identify any sources aside from himself. This Court, and others, have held that this is simply not enough to ensure reliability. *Tolbert v. Berryhill*, 2018 WL 6725876, *4 (N.D. Ill. Dec. 21, 2018) ("The VE's reliance on personal experience alone did not provide substantial evidence to support her job numbers or the ALJ's determination that Plaintiff could perform other work."); *Johnson v. Colvin*, 2015 WL 1486803, **9-10 (N.D. Ind. Mar. 31, 2015); *Smith v. Astrue*, 2010 WL 3526655, *17 (N.D. Ill. Sept. 1, 2010) ("If a vocational expert could justify his testimony merely by referring to personal experience, it is difficult to understand how such testimony could ever be meaningfully challenged[.]"). In the present case, the VE's testimony is unsupported and thus fails to provide substantial evidence in support of the ALJ's decision.  Therefore, remand is required on this point.

Next, Plaintiff argues that the ALJ failed to include any limitations related to her irritable bowel syndrome, despite finding it to be a severe impairment. The ALJ failed to include any limitations related to Plaintiff's IBS in the RFC assessment or in any hypotheticals to the VE. "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). By definition, an impairment is "severe" if it "significantly limits"

an individual's "physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c).

Given this definition, if the ALJ meant to find no limitations related to Plaintiff's IBS were

required, he should have explained why. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir.

2004).

Plaintiff further argues that the ALJ's failure to explain why he did not include any

limitations related to Plaintiff's IBS was not harmless error. Plaintiff testified that there were

maybe 3 days a week where she did not have diarrhea, and on the days where she did not have

diarrhea, she had constipation which made her back pain worse. (AR 61.) She explained that she

had "absolutely no warning" before her bowels would loosen, and would have to "load up on

Imodium" before she left the house. (AR 62.) The Imodium would last only a few hours and

would lead to constipation for 3 days. (*Id*.) On days where she had diarrhea, she would have to

use the restroom "at least every 20, 30 minutes for most of the day," and that she would "have to

just stay on one floor of the house" so she would be "close to the bathroom." (*Id*.) Plaintiff

estimated that she would only stay in the bathroom for 10 minutes at a time because it was

uncomfortable to sit for longer than that. (AR 62-63.) She later testified that her irritable bowel

syndrome was a major source of her anxiety. (AR 80-81.) Plaintiff contends that it is not clear

whether someone with these symptoms would be able to work as a data entry clerk, collator,

office helper, or small parts assembler. The VE testified that an individual who had to use the

restroom every 20 to 30 minutes for 10 minutes at a time would be unable to sustain competitive,

full-time work. (AR 88.) The VE also testified that an individual could not be absent more than

one day a month, or off-task more than 10 percent of the time, to be employable. (AR 88.)

The Commissioner responds that the ALJ noted Plaintiff's testimony regarding her

problems with diarrhea and constipation (citing AR 34). The ALJ observed that Plaintiff

"experience[d] diarrhea 4-5 days a week, every 20 to 30 minutes and on the days she does not

have diarrhea she is constipated." (AR 34.) The Commissioner argues that the ALJ noted the

following evidence: a normal abdominal CT exam in November 2015; Plaintiff's failure to report

any IBS symptoms in a December 2015 appointment; a normal abdominal CT scan and exam in

March 2016; Plaintiff's reports of improved abdominal pain in April of 2016; Plaintiff's report

that she had no abdominal pain and improved IBS in August of 2016; and Plaintiff's report in

February of 2017 that her IBS medications helped improve her symptoms. (Citing AR 33, 497,

567, 588-89, 634-35, 652, 677, 700.)  Plaintiff contends, however, that this discussion does not

explain how or why the ALJ determined that *no* limitations related to her IBS were necessary. *See*

SSR 96-8p ("The RFC assessment must include a discussion of why reported symptom-related

functional limitations and restrictions can or cannot reasonably be accepted as consistent with the

medical and other evidence.").

Plaintiff points out that, despite the Commissioner's arguments, he is unable to identify

any portion of the ALJ's decision where the ALJ articulated why any limitations related to

Plaintiff's IBS were unnecessary, even though it was a severe impairment. *Indoranto v. Barnhart*,

374 F.3d 470, 474 (7th Cir. 2004) ("Notably absent from the ALJ's order is a discussion of how

[the claimant's] headaches and blurred vision affected her ability to work."). This Court agrees

with Plaintiff that remand is required on this issue.

Next, Plaintiff argues that the ALJ failed to properly evaluate her symptoms.  Specifically,

Plaintiff contends that the ALJ did not sufficiently analyze her pain. Where a claimant's pain is

found to be not fully supported by the objective medical evidence, the ALJ must "investigate all

avenues presented that relate to pain[.]" *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

The ALJ must discuss: the nature and intensity of the claimant's pain; precipitation and

aggravating factors; dosage and effectiveness of any pain medications; other treatments for the

relief of pain; functional restrictions; and the claimant's activities of daily living. (*Id.*) Plaintiff

testified that her chronic back pain was a significant reason she was unable to work, and that her

pain was constant. (AR 56.) She testified that her pain had not improved since her 2015 spinal

surgery. (AR 57-58.) She experienced pain down her left leg every day as well. (AR 58.) She

explained that her medications reduced, but did not eliminate, her pain. (AR 56.) Cold weather

and rain made her pain "twice as bad." (AR 58.) Plaintiff testified that alternating positions

helped her pain. (AR 59.) She would lie down for 15 minutes at a time once or twice a day. (AR

78.) The ALJ acknowledged medical records that documented her leg pain, back pain, nerve pain,

abdominal pain, and pain in her ankles and feet. (AR 31, 32, 33, 34.) Plaintiff contends that the

ALJ did not evaluate her pain as he was required to do pursuant to *Zurawski*. *See also* SSR 16-3p

("[W]e will not disregard an individual's statements about the intensity, persistence, and limiting

effects of symptoms solely because the objective medical evidence does not substantiate the

degree of impairment-related symptoms alleged by the individual.").

ALJs are required to consider a claimant's medication, including any side effects that they

experience. SSR 16-3p; 20 C.F.R. § 404.1529(c)(3)(iv); 20 C.F.R. § 416.929(c)(3)(iv). The

record reflects that Plaintiff was prescribed many medications, including: Tizanidine; Tramadol;

Gabapentin; Promethazine; Metoprolol; Hyoscyamine; Glipizide; Pantoprazole;  Clonazepam;

Flexeril; Norco; and Lyrica. (AR 299, 378, 407.) She testified that her side effects were a major

reason she was unable to work. She stated that she experienced significant drowsiness, citing a

recent time where she had fallen asleep while eating. (AR 65.) She no longer took her medication before driving for fear of falling asleep. (AR 67.) She experienced short-term memory loss and confusion, and she often had to call her mother while driving for a reminder of how to get to familiar places. (AR 66.) She would often forget things before even 10 minutes had passed. (*Id.*) In reports to the Agency, she reported drowsiness, short term memory loss, confusion, dizziness, difficulty with understanding and concentrating, diarrhea, and abdominal pain. (AR 247, 269.) The ALJ addressed Plaintiff's reported side effects only once: "The claimant also testified to having difficulty remembering directions and coming close to falling asleep while driving; however, she did not report this to any of her treating physicians, and in fact reported that she had no driving impairments on her medication regimen." (AR 32.) Plaintiff contends that the ALJ was incorrect. Plaintiff notes that in June of 2015, Chasity Sliger NP-C wrote that her Gabapentin was effective, but that she could not increase her dosage due to "memory side effects[.]" (AR 408.) In September of 2016, David Paris, M.D., wrote that she reported occasional loose stool as a side effect. (AR 540.) Plaintiff explicitly testified that she discussed her side effects with her pain doctor, and that she had tried Lyrica instead of Gabapentin but could not afford it. (AR 66-67.) Plaintiff argues that even if the ALJ were correct, the Seventh Circuit has recognized that an individual may experience side effects but not report them to doctors "because the benefits of a particular drug [may] outweigh its side effects." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009).

Plaintiff further argues that the ALJ's error was not harmless. Plaintiff contends that if accepted as consistent with the record, Plaintiff's reported drowsiness, diarrhea, memory loss, and confusion could render her excessively absent or off-task during the workday. The VE testified

that an individual could not miss more than 1 day per month, or be off-task more than 10 percent of the workday, to sustain competitive, full-time employment. (AR 88.)

ALJs should also assess the treatment, other than medication, that a claimant receives to relieve their symptoms. SSR 16-3p; 20 C.F.R. § 404.1529(c)(3)(v); 20 C.F.R. § 416.929(c)(3)(v). Along with her lumbar surgery (AR 362), Plaintiff received physical therapy and injections. (AR 237, 238, 367, 372, 382, 772.) The ALJ did not evaluate her treatment history, along with her many medications, or articulate how they were considered in reaching his conclusion. The Seventh Circuit has recognized that "a claimant's election to undergo serious treatment, such as . . . taking 'heavy doses of strong drugs,' indicates that the claimant's complaints of pain are likely credible." *Scrogham v. Colvin*, 765 F.3d 685, 701 (7th Cir. 2014) (quoting *Carradine v. Barnhart*, 360 F.3d 751, 755 7th Cir. 2004)); *see also Murphy v. Berryhill*, 2019 WL 1123511, *16 (N.D. Ind. Mar. 11, 2019) (faulting he ALJ who "did not explain why Plaintiff's use of narcotic pain medications, treatment with specialists, and use of a TENS device did not further support her allegations of disabling pain and symptoms"); SSR 16-3p ("Persistent attempts to obtain relief of symptoms . . . may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent.").

ALJs are obligated to evaluate a claimant's activities of daily living. SSR 16-3p; 20 C.F.R. § 404.1529(c)(3)(i); 20 C.F.R. § 416.929(c)(3)(i). In finding that Plaintiff's statements about her symptoms were "not entirely consistent" with the record, the ALJ noted that she "testified that she is able to wash dishes, garden at her church, do laundry and grocery shop twice a week." (AR 34.) As discussed above, the record does not reflect that Plaintiff regularly gardened or was able to keep up with her laundry regularly. (AR 69-70, 71, 246.) She required

help from her daughter and mother to lift and carry heavy items at the grocery store and to get groceries into her home. (AR 72, 73.) Plaintiff argues that the ALJ failed to explain how Plaintiff's ability to do these minimal activities, with help from others, contradicted her reports about her disabling pain, bowel issues, drowsiness, and memory problems. *Zurawski*, 245 F.3d at 887. Plaintiff contends that the fact that she was able to complete these activities, with assistance, does not establish that she could sustain full-time work. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).

Plaintiff also notes that the ALJ did not discuss Plaintiff's strong work history. She earned between $40,000 and $50,000 yearly from 2005 through 2013. (AR 227.) She wrote that it had "added to [her] depression to go from $56,000 a year to zero dollars, especially with all [of her] medical and medication costs." (AR 246.) Plaintiff argues that these earnings should have been recognized as supportive of Plaintiff's statements about her disabling symptoms. While ALJs are not statutorily required to consider a claimant's work history, the Seventh Circuit has recognized that "a claimant with a good work record is entitled to [a finding of] substantial credibility when claiming an inability to work because of a disability." *Cole v. Colvin*, 831 F.3d 411, 415 (7th Cir. 2016) (quoting *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015)); see also Stark v. Colvin, 813 F.3d 684, 689 (7th Cir. 2016); *Singletary v. Sec'y of Health, Educ. and Welfare*, 623 F.2d 217, 219 (2d Cir. 1980) (stating that the claimant's "history of hard labor performed under demanding conditions over long hours . . . justifie[d] the inference that when he stopped working he did so for the reasons testified to").

In response, The Commissioner argues that the ALJ "explicitly followed the Court's instruction in *Zurawski*, and in addition to the objective medical evidence, he considered and

discussed Plaintiff's statements to medical providers, her hearing testimony, and her activities of daily living"(citing AR 34.) However, it is undisputed that the ALJ dedicated one single paragraph to discussing Plaintiff's symptoms. (AR 34.) The ALJ mentioned: her reported irritable bowel symptoms; her smoking habits; her non-compliance with diabetic medications and inability to diet and exercise; one treatment record stating that Tramadol helped manage her pain; her testimony about her activities of daily living; and her testimony having difficulty remembering directions and feeling sleepy while driving. (*Id*.) Clearly, this is not a sufficient analysis under *Zurawski*. The ALJ failed to explore "all avenues" of Plaintiff's pain. *Zurawski* at 887.

Plaintiff testified that the side effects of her medications precluded full-time work. (AR 65, 66, 67.) During the hearing, and in reports to the Agency, she described experiencing the following side effects: drowsiness; short-term memory loss; confusion; dizziness; poor comprehension; poor concentration; diarrhea; and abdominal pain. (AR 65, 66, 67, 247, 269.) The Commissioner relies on the ALJ's statement that Plaintiff "did not report her memory or driving problems to her treating physicians"(citing AR 34). The Seventh Circuit has held that a claimant's failure to report side effects during treatment sessions does not mean that the claimant did not experience them. *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). Moreover, the ALJ's finding was incorrect. Plaintiff reported memory related side effects from Gabapentin in June of 2015 (AR 408), December of 2015 (AR 788), May of 2016 (AR 785), and September of 2016. (AR 782.) She consistently reported problems with memory and sleepiness/fatigue during treatment sessions. (AR 425, 442, 526, 644, 649, 677, 692, 708, 715.)  It is clear that the ALJ erred by failing to meaningfully evaluate these reported side effects and should have discussed whether these side effects would have affected Plaintiff's ability to work full-time. *John P. v. Saul*, 2019

WL 4072118, *12 (N.D. Ind. Aug. 28, 2019).

With respect to Plaintiff's argument that the ALJ failed to properly evaluate her treatment history, other than medication, which included lumbar surgery, physical therapy, and injections (AR 237, 238, 362, 367, 372, 382, 772), the Commissioner responds that the ALJ "specifically discussed" her lumbar injections, physical therapy, and medication (citing AR 31, 33). However, the portions of the ALJ's decision that the Commissioner relies upon show that the ALJ only summarized these treatments. (AR 31, 33.) A summary is not the same as an analysis of the evidence. *Perry v. Colvin*, 945 F.Supp.2d 949, 965 (N.D. Ill. 2013) ("[T]he act of summarizing the evidence is not the equivalent of providing an analysis of the evidence."). The ALJ should have explained how Plaintiff's extensive treatment history was considered in reaching his conclusions about her reported symptoms. SSR 16-3p; 20 C.F.R. § 404.1529(c)(3)(v); 20 C.F.R. § 416.929(c)(3)(v); *Janet F. v. Saul*, 2020 WL 1443783, *8 (N.D. Ind. Mar. 23, 2020) (faulting the ALJ because she "did not explain why she was not persuaded by Plaintiff's significant treatment history").

The Commissioner asserts that "the ALJ did not equate Plaintiff's ability to perform certain daily activities to the ability to perform full-time in a workplace setting," and instead "only used the inconsistency between Plaintiff's asserted limitations and her ability to perform the identified activities as a reason to find her less than fully credible" (citing AR 34). At best, the ALJ's comment regarding her activities of daily living leaves it unclear how he assessed them: "The claimant also testified that she is able to wash dishes, garden at her church, do laundry and grocery shop twice a week." (AR 34.) As Plaintiff argued, the record does not indicate that she was able to garden regularly. (AR 69-70, 246.) Similarly, she was not always capable of doing her

laundry regularly. (AR 71.) Plaintiff needed help from her daughter and mother to grocery shop.(AR 72, 73.) As such, it is unclear how these activities were inconsistent with Plaintiff's reported symptoms. *See e.g., Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016) (faulting the ALJ for failing to "identify a basis for his conclusion that the life activities [the claimant] reported were inconsistent with the physical impairments she claimed"). As the ALJ failed to properly evaluate Plaintiff's symptoms, remand is required.

Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

Entered: May 18, 2020.

s/ William C.  Lee
William C. Lee, Judge
United States District Court